IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW LEE JASPAR,

        Plaintiff,                      No. 2:06 cv-1177 GEB KJN P

   vs.

KHOURY, et al.,

        Defendants.             ORDER

_____/

I. Introduction

       Plaintiff is a prisoner proceeding without counsel who paid the filing fee to initiate this civil rights action pursuant to 42 U.S.C. § 1983. The case proceeds on plaintiff's original complaint filed May 31, 2006 (Dkt. No. 1) against defendant physicians Nicholas Aguilera and Joseph Bick for deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment. (See Dkt. Nos. 40, 44, (dismissing all other named defendants) and Dkt. Nos. 38, 40 (dismissing all other claims).)

       Presently pending is defendants' motion for summary judgment filed July 24, 2009. (Dkt. No. 48.) Plaintiff has filed an opposition (Dkt. No. 56) and defendants filed a reply (Dkt. No. 61).

////

## II. The Complaint

Plaintiff alleges that in November 2002 he was transferred from California State Prison-Corcoran ("CSP-C") to the California Medical Facility ("CMF"). (Complaint ("Compl."), Dkt. No. 1, at ¶ 1.) While at CSP-C, plaintiff, who has Human Immunodeficiency Virus ("HIV"), was diagnosed and treated by an HIV Specialist and received testosterone treatments to combat metabolic dysfunction symptoms associated with plaintiff's HIV and Highly Active Antiretroviral Therapy ("HAART"). (Id. at ¶¶ 1, 2.) Plaintiff describes these symptoms as "deterioration and loss of lean body mass, dramatic changes in body composition, lowered energy levels, general feeling of weakness and tiredness, and the accumulation of visceral fat in the body that impinges upon vital organs [such as] heart, lungs, kidneys, liver, etc." (Id. at ¶ 1.) Plaintiff alleges that his testosterone treatments had provided "significant improvement of his condition." (Id. at ¶ 1.)

The complaint provides that upon plaintiff's arrival at CMF, defendant Aguilera, a CMF physician, discontinued plaintiff's testosterone treatments "without discussion or consultation," and "without a physical examination, measurement for waist-hip ratio, DEXA (Dual Energy X-Ray Absorptiometry), ultra-sound, computed topography, MRI, or any other medically sound means of evaluation." (Id. at ¶ 2.) Moreover, "defendant Aguilera refused to suppliment (sic) plaintiff's treatment with an equally acceptable course of treatment stating to plaintiff in a glib and confrontational tongue, 'You're just fat.'" (Id. at ¶ 3.)

The complaint states that plaintiff's "condition . . . remains untreated to this day, and is continuous in nature. Plaintiff has incurred a 'physical injury' as a result of the interruption and denial of treatment as follows: Painful, progressive deterioration of muscle tissue, and dehabilitating (sic) accumulation of visceral fat threatening vital organ function as well as malaise and compromised quality of life that is associated with this type of metabolic disfunction (sic)." (Id. at ¶ 4.)

The complaint further alleges that "when questioned by plaintiff, defendant

Aguilera voiced that [defendant] Dr. Bick [CMF Chief Medical Officer and Aguilera's supervisor] informed him that budget constraints prevent treatment for this condition." (Id. at ¶ 2.)  The complaint alleges that Bick "acquiesced" in Aguilera's decision and "failed and/or refused to terminate the series of acts which led to plaintiff's present state of deterioration." (Id. at ¶ 5.)

III. Current Contentions

        The instant motion seeks summary judgment on the entirety of plaintiff's complaint.  Plaintiff generally opposes the motion, seeking to "suspend or vacate" it, on the ground that defendants' evidence submitted in support of their motion includes a previously undisclosed and critical fact that changes the substance of this action.  For the following reasons, this court finds plaintiff's argument persuasive.

        At issue is the declaration of CMF physician Dr. U. Pai.  (See July 23, 2009 Declaration of U. Pai in Support of Motion for Summary Judgment, Dkt. No. 48-7; resubmitted by plaintiff in his Opposition, Dkt. No. 56, at 5-7 (hereafter "Pai Decl.").)  Dr. Pai states in pertinent part that she treated plaintiff for HIV and related illnesses between November 2002 and May 2003.  (Pai Decl. at ¶ 5.)[1]  Based upon a two-year-old lab report in plaintiff's medical records, dated November 21, 2000, which showed a total testosterone level of 1,965 nanograms per deciliter ("ng/dl") (in excess of the normal range of 241 to 850 ng/dl), Dr. Pai "determined that [plaintiff's] testosterone treatments were not medically necessary [and] therefore decided not to continue the testosterone treatment, and monitor the issue." (Pai Decl. at ¶ 12.)  Dr. Pai states that her decision was consistent with CDCR policy authorizing only medically-indicated treatments (id. at ¶¶ 6, 10, 11), "[t]his was discussed with the patient," and "[d]uring the period of my medical care of Jaspar, he never repeated any request for testosterone supplements" (id. at ¶¶ 12, 13.)

---

[1] Plaintiff was transferred to CMF on November 21, 2002.  (Dkt. No. 48-10, at p. 2.)

1 Dr. Pai is not referenced in plaintiff's complaint yet, according to Dr. Pai's
2 declaration, she was the first of plaintiff's medical providers at CMF and the one to make the
3 critical medical decision that is at the heart of plaintiff's action. In contrast, defendant Bick
4 states he treated plaintiff "on March 13, 2003, June 16, 2003, and December 8, 2003" (Bick
5 Decl. at ¶ 15), while defendant Aguilera states that he treated plaintiff "between May 2003 and
6 June 2007.

7 Plaintiff contends that defendants have now "produced medical records which
8 indicate that a Dr. Pai discontinued plaintiff's medications against specialist orders."
9 (Opposition ("Oppos."), Dkt. No. 56, at 2.) Plaintiff asserts, "defendants have deceived plaintiff
10 to believe that Dr. Aguilera discontinued his specialists prescribed course of medical treatment;
11 the medical records which indicated, to the contrary, that Dr. Pai discontinued the treatment was
12 factually omitted from his reach until the time of defendants' motion. Concealing these facts,
13 although Aguilera informed plaintiff that Dr. Bick told him to discontinue plaintiff's treatment
14 due to budgetary constraints . . . [and] concealing the factual acts of Dr. Pai and records
15 demonstrating she discontinued plaintiff's specialist prescribed treatment, is arbitrary conduct
16 resulting in inadvertent surprise." (Id.)

17 Plaintiff has filed a sworn affidavit (Plaintiff's Declaration ("Pltf. Decl."), Dkt.
18 No. 56, at 8-10) in which he states that he sought from "defendant entity" his entire medical
19 record both before and during this litigation but "[n]ever on either of these requests did defendant
20 entity or defendants disclose any medical records indicating that Dr. Pai discontinued my
21 testosterone treatments" or, for that matter, that "Dr. Aquilera discontinued my testosterone
22 treatments." (Id. at ¶¶ 2-5). Rather, plaintiff states that he relied on the representations of Dr.
23 Aguilera "that his Chief Medical Officer, supervisor, Dr. Bick, expressly told him to discontinue
24 my specialist prescribed testosterone treatments as they were not urgent enough to justify the
25 monetary expenditure for this treatment. He also made it clear that this was not exclusive to me
26 and that all patients were subject to having their treatment regiments streamlined and that

treatment I would have received as a free person will not be available to me at CMF." (Id. at ¶ 8.) Plaintiff states that on numerous occasions he informed Dr. Aguilera "of the abrupt changes in body mass, the loss of lean muscle tissue, and the accumulation of visceral fat that had occurred since the discontinuation of the testosterone treatments," and "advised him repeatedly that the testosterone was not the treatment of choice the specialist [at CPS-C] recommended in our consultation and treatment period but rather, a steroid used in AIDS patient (which I am) to treat this metabolic disfunction (sic) known as oxandr[o]lone." (Id. at ¶ 9.) Plaintiff continues, "That treatment was unavailable at the time of the specialist's diagnoses and testosterone shots were given as a temporary substitute until which time oxandralone (sic) could be ordered and supplied. I was subsequently transferred to [CMF] where all treatment was discontinued without consultation." (Id.)

Plaintiff further states that "[w]hen I received the medical record indicating Dr. Pai factually discontinued my testosterone treatments, I was shocked and surprised." (Id. at ¶ 7.) He explains that "Dr. Aguilera's statements were deceiving to me. As the medical records reflecting Dr. Pai's actions and involvement were concealed from me, I drafted my causes of action based on Dr. Aguilera's mis-information shared with me while under his care in his professional capacity." (Id. at ¶ 10.)

Plaintiff moves for an order suspending or vacating defendants' motion for summary judgment, and seeks leave for a 45-day period of time within which to amend his complaint to add Dr. Pai as a defendant and to re-allege his conspiracy claim previously dismissed without prejudice by the court.[2]

---

[2] The court dismissed plaintiff's conspiracy claim for the following reasons:

> Plaintiff's complaint does not allege any facts showing that defendants reached any sort of agreement to harm him. Instead, plaintiff merely alleges that defendants "had a mutual meeting of the minds, in direct and/or indirect participation by common design, to ratify the deprivations of inadequate and negligent medical [c]are which resulted in the deliberate indifference to plaintiff's serious medical needs." Compl. ¶ 11. As stated above, such conclusory

1 Defendants respond in pertinent part that "[d]efendants never withheld any
2 medical records from Jaspar.  To the contrary, Jaspar never made a discovery request for a copy
3 of his medical records.  Moreover, the records that Jaspar claims were withheld – records of Dr.
4 Pai's treatment of Jaspar – do not create a material dispute of fact sufficient to overcome
5 Defendants' summary judgment motion.  [Rather,] [t]hese records reinforce Defendants'
6 argument that CMF's medical staff . . . [properly withheld] Jaspar's testosterone treatment . . ."
7 (Reply, Dkt. No. 61, at 3.)  The attached declaration of defendants' counsel provides that the only
8 discovery sought by plaintiff was a First Set of Interrogatories propounded on defendants
9 Aguilera and Bick, and now-dismissed defendant Khoury.  (Dkt. Nos. 61-2, 61-3.) (Declaration
10 of Deputy Attorney General Anthony P. O'Brien ("O'Brien Decl.") at ¶¶ 2-5.)

## IV. Discussion

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial'" to resolve material factual issues presented in the case.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) Advisory Committee's note on 1963 amendments).

On March 27, 2008, the court advised plaintiff of the requirements for opposing a motion for summary judgment.  (Dkt. No. 19); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Plaintiff was advised in pertinent part that "[i]f there is good reason why [material] facts are not available to plaintiff when he is required to oppose a motion for summary

---

statements are insufficient to state a claim for conspiracy.  Accordingly, plaintiff's conspiracy claim must be dismissed.

(Findings and Recommendations, Dkt. No. 38, at 6; adopted by Order filed March 13, 2009, Dkt. No. 40.)

1  judgment, the court will consider a request to postpone considering the motion." (Dkt. No. 19, at

2  4, ¶ 11, lines 19-21.) The court's instruction was an implicit reference to Fed. R. Civ. P. 56(f),

3  which provides in full:

> (f) If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>   (1) deny the motion;
>   (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>   (3) issue any other just order.

To prevail on a Rule 56(f) motion, the moving party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of California v. Campbell, 138 F.2d 772, 779 (9th Cir. 1998). "In making a Rule 56(f) motion, a party opposing summary judgment 'must make clear what information is sought and how it would preclude summary judgment.'" Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998) (quoting Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987)). The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists. Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987). As more recently summarized by the Ninth Circuit:

> Under Rule 56(f), the court may postpone ruling on a summary judgment motion where the non-moving party needs "additional discovery to explore 'facts essential to justify the party's opposition.'" Crawford-El v. Britton, 523 U.S. 574, 599, n. 20 (1998) (quoting Fed. R.Civ. Pro. 56(f)). **Though the conduct of discovery is generally left to a district court's discretion, summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs.** Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988); Harris v. Pate, 440 F.2d 315, 318 (7th Cir. 1971) (Stevens, J.) (observing that the combined disabilities of self-representation and confinement hinder a plaintiff's ability to gather evidence). Thus summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. Klingele, 849 F. 2d at 412.

Jones v. Blanas, 393 F. 3d 918, 930 (9th Cir. 2004) (emphasis added).

1          Defendants' motion is premised on their argument that defendant physicians acted
2 prudently in refusing plaintiff testosterone based on the relatively high levels of the hormone in
3 his blood (based on lab (Plaintiff was transferred to CMF on November 21, 2002. (Dkt. No. 48-
4 10, at p. 2.)) tests conducted in 2000, 2004 and 2007) and the generally deleterious effects of
5 excessive testosterone for the conventional patient, which may be compounded by plaintiff's
6 high cholesterol.  However, plaintiff is not a conventional patient.  Defendants' argument and
7 supporting evidence do not address the role of testosterone – or oxandrolone or any alternative
8 medication – in treating the metabolic complications associated with HIV/HAART, either
9 generally or as applied to plaintiff.

10          Moreover, defendants provide no evidence relative to plaintiff's treatment at CSP-
11 C prior to his transfer to CMF, precluding the court's assessment of the considerations
12 supporting plaintiff's testosterone treatment while housed at CSP-S, and the impact of these
13 considerations, if at all, in CMF's termination of the treatment without providing an alternative.
14 The court cannot resolve plaintiff's claim of deliberate indifference to his serious medical needs
15 without evidence of the accepted standard of care for HIV-positive patients receiving HAART,
16 both outside and within the prison population, with due consideration to the practical and
17 budgetary constraints of the state prison system and matters of equity among prisoners.  While
18 the Eighth Amendment sets a high threshold, Estelle v. Gamble, 429 U.S. 97 (1976), the court
19 must assess evidence specific to plaintiff relative to his unique medical concerns and within the
20 appropriate reference population.

21          These circumstances not only satisfy the requirements of Rule 56(f), but those of
22 Rule 15(a)(2), authorizing amendment of the complaint "when justice so requires."  Plaintiff has
23 demonstrated by affidavit that the facts presented by defendants in Dr. Pai's declaration are both
24 new and material, require development through further discovery, and are essential both to
25 plaintiff's action and any motion for summary judgment.  Fed. R. Civ. P. 56(f).  In addition,
26 justice requires that plaintiff be granted leave to amend his complaint to incorporate the new facts

revealed by Dr. Pai and to add her as a defendant in this action. Fed. R. Civ. P. 15(a)(2).[3] The reasons for CMF's termination of plaintiff's testosterone treatment are at the core of plaintiff's action, and the apparently pivotal role of Dr. Pai in making this decision renders her inclusion in this action necessary to resolve plaintiff's Eighth Amendment claim. Such amendment of the complaint does not present issues of bad faith or dilatory motive on the part of the plaintiff, nor result in undue delay or prejudice to defendants. Foman v. Davis, 371 U.S. 178, 182 (1962); Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999).

The court will therefore grant plaintiff's motion to vacate defendant's motion for summary judgment without prejudice to the filing a new motion at the appropriate time. Plaintiff will be granted leave to file an amended complaint and provided a reasonable period within which to conduct further discovery.

V. Conclusion

For the foregoing reasons IT IS HEREBY ORDERED that:

1. Plaintiff's motion (Dkt. No. 56) to vacate defendants' motion for summary judgment is granted;

2. Defendants' motion for summary judgment (Dkt. No. 48) is denied without prejudice;

3. Plaintiff is granted leave to file an amended complaint within 60 days of the filing date of this order;

////
////
////
////
////

---

[3] However, absent the development of additional facts, plaintiff is not granted leave to include a conspiracy claim.

9

4. The Discovery and Scheduling Order filed April 1, 2009 (Dkt. No. 43) is vacated; a new discovery and scheduling order will be issued in due course.

SO ORDERED.

DATED: July 23, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/jasp1177.msj